UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
PIKEVILLE

| | | |
|---|---|---|
| BRIDGET ROSE POLLY, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 10-135-ART |
| | ) | |
| v. | ) | |
| | ) | **MEMORANDUM OPINION** |
| AFFILIATED COMPUTER SERVICES, | ) | **AND ORDER** |
| INC., | ) | |
| | ) | |
| Defendant. | ) | |

*** *** *** ***

When parties agree to arbitrate their claims, they must honor that commitment. When one party reneges and brings a lawsuit anyway, the court must enforce the agreement to arbitrate when one of the parties asks it to do so. After determining that (1) the parties did, in fact, enter into a valid arbitration agreement, and (2) the plaintiff's claims fall within the scope of that agreement, the court must compel arbitration. In this case, the defendant, Affiliated Computer Services ("ACS"), filed a motion asking the Court to compel arbitration of the plaintiff, Bridget Rose Polly's, claims. R. 6. Because Polly and ACS validly entered into an arbitration agreement and all of Polly's claims fall within the scope of that agreement, the Court will grant ACS' motion to compel arbitration and dismiss Polly's lawsuit.

**BACKGROUND**

Polly began working for ACS as a Customer Care Assistant in January 2008. ACS has a comprehensive Dispute Resolution Plan ("DRP") for addressing workplace conflicts. The DRP purports to be "the exclusive, final and binding method by which Disputes are resolved." R. 6,

Attach. 3 at 6. Under the DRP, if an employee has a dispute with ACS, she must resolve it using one or more of a series of escalating options, starting with discussions under an Open Door policy and ending with binding arbitration. *Id.* at 5. The DRP provides that "[s]ubmission of an application, regardless of form, for employment constitutes consent by both the Applicant and the Company to be bound by this Plan." *Id.* at 7. When Polly applied for her position at ACS, she electronically signed a document acknowledging and agreeing "that the DRP will be the exclusive means for resolving any dispute or claim concerning my application for employment or the terms and conditions of my employment with [ACS]." R. 6, Attach. 4.

In addition to informing job applicants about the DRP, ACS also emphasizes the DRP in other ways after an employee starts with the company. ACS' Employee Guidebook advises employees that "ACS has adopted a Dispute Resolution Plan as the exclusive means of resolving the majority of work related problems." R. 6, Attach. 7 at 16. Polly electronically signed a document acknowledging that she "received and will review the current Employee Guidebook." R. 6, Attach. 5 at 1. ACS also requires new employees to complete a New Hire course, which includes several PowerPoint slides and other written materials explaining the DRP. R. 6, Attach. 9-15. Finally, ACS requires employees to complete Global Ethics Awareness Training courses, which also cover the DRP. R. 6, Attach. 17 at 17, Attach. 18 at 1-6. ACS submitted a computer printout showing that Polly completed the New Hire course as well as the Global Ethics Awareness Training in 2009 and 2010. R. 6, Attach. 16.

In June 2010, after two-and-a-half years of employment with ACS, Polly requested medical leave because she was about to give birth to her daughter. R. 1, Attach. 2. Polly claims

that ACS granted her medical leave under the Family and Medical Leave Act ("FMLA") from

July 5 to August 13, 2010, but that ACS nevertheless terminated her employment on August 4,

2010, because she was a "no call-no show." *Id*. Polly sued ACS in Kentucky state court,

alleging that ACS interfered with the exercise of her rights under the FMLA and retaliated

against her for exercising those rights. *Id.* Polly subsequently amended her complaint, adding

a claim that ACS wrongly interfered with her right to unemployment insurance benefits by

falsely reporting to the Kentucky Division of Unemployment Insurance that Polly had been

discharged because of misconduct. R. 1, Attach. 6.

ACS removed Polly's lawsuit to this Court on November 5, 2010. R. 1. On November,

30, 2010, ACS filed a motion to compel arbitration of Polly's claims. R. 6. Polly responded,

R. 7, and ACS replied, R. 8.

## DISCUSSION

When Congress enacted the Federal Arbitration Act ("FAA") into law in 1925, it

enshrined in the U.S. Code "a liberal federal policy favoring arbitration agreements." *Moses H.

Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983); *see Circuit City Stores, Inc.

v. Adams*, 532 U.S. 105, 111 (2001) ("[T]he FAA compels judicial enforcement of a wide range

of written arbitration agreements."). Under the FAA, "[a] written provision in any . . . contract

evidencing a transaction involving [interstate] commerce to settle by arbitration a controversy

thereafter arising out of such contract . . . shall be valid, irrevocable, and enforceable, save upon

such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. When

a lawsuit involves "any issue referable to arbitration under an agreement in writing for such

arbitration, the court in which such suit is pending, upon being satisfied that the issue involved

. . . is referable to arbitration under such an agreement, shall on application of one of the parties

stay the trial of the action until such arbitration has been had." 9 U.S.C. § 3.

ACS has moved to compel arbitration of Polly's claims under the DRP. R. 6. Before

compelling arbitration, the Court "must engage in a limited review to determine whether the

dispute is arbitrable; meaning that [(1)] a valid agreement to arbitrate exists between the parties

and [(2)] that the specific dispute falls within the substantive scope of that agreement." *Masco*

*Corp. v. Zurich Am. Ins. Co.*, 382 F.3d 624, 627 (6th Cir. 2004) (quoting *Javitch v. First Union*

*Sec., Inc.*, 315 F.3d 619, 624 (6th Cir. 2003)). Polly resists ACS' motion to compel arbitration

at both steps. First, she argues that she never agreed to the arbitration provisions in the DRP

because she cannot recall signing the DRP or being informed that she would be forfeiting her

right to bring claims in court. Second, she argues that the claim in her amended complaint—for

wrongful use of administrative proceedings in relation to her claim for unemployment

benefits—is specifically exempted from arbitration under the DRP. Polly is wrong on both

counts.

### 1.    Polly and ACS Entered Into a Valid Arbitration Agreement

Polly's first argument is, essentially, that she never agreed to be bound by the DRP. As

a threshold inquiry, the Court must determine whether Polly and ACS actually agreed to the

arbitration clause in the DRP. *See Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*,

473 U.S. 614, 625 (1985) ("[T]he first task of a court asked to compel arbitration of a dispute

is to determine whether the parties agreed to arbitrate that dispute."). "Because arbitration

agreements are fundamentally contracts," the Court must "review the enforceability of an arbitration agreement according to the applicable state law of contract formation." *Seawright v. Am. Gen. Fin. Servs., Inc.*, 507 F.3d 967, 972 (6th Cir. 2007) (citing *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 943-44 (1995)). In Kentucky, like in all jurisdictions, a contract is only enforceable if both parties agree to be bound by it. *See David Roth's Sons, Inc. v. Wright & Taylor, Inc.*, 343 S.W.2d 389, 391 (Ky. 1976). Typically, parties manifest their agreement to a contract with a signature. But that is not the only way. Kentucky courts will also enforce unsigned arbitration agreements where the parties have indicated acceptance of the contract through their actions. *See, e.g.*, *Sweeney v. Theobald*, 128 S.W.3d 498, 501 (Ky. Ct. App. 2004). This accords with the text of the FAA, which requires that arbitration agreements be in writing, but does not necessarily require that they be signed. 9 U.S.C. § 2; *see Seawright*, 507 F.3d at 978.

In this case, ACS submitted several pieces of evidence demonstrating that Polly agreed to the DRP: an electronic signature page in which Polly agreed that the DRP would be "the exclusive means" for resolving any disputes with ACS, R. 6, Attach. 4; an electronic signature page acknowledging that Polly received a copy of the Employee Guidebook, which also advised employees about the DRP, R. 6, Attach. 5 at 1; and a computer printout showing that Polly completed a New Hire course and a Global Ethics Awareness Training course, both of which also informed employees about the DRP, R. 6, Attach. 16. Despite all of this, Polly argues that "there is no reliable evidence . . . that [she] even knew there was a Dispute Resolution Plan." R. 7 at 4. Polly has produced three affidavits in support of her argument that she did not agree

5

to the DRP. The first affidavit is from Polly herself. In it, she states that she has "no recollection of being advised by [ACS] that [she] would be precluded from asserting any claims . . . in Court," and that she has "no recollection of providing [her] electronic signature" to indicate her acceptance of the DRP. R. 7, Attach. 1 at ¶¶ 7-8. She also states that she "do[es] not have a recollection of the power-point slides" that ACS says it presented during its New Hire course. *Id*. ¶ 9. Polly also submitted affidavits from James Polly (her husband) and Jonathan Isaacs, both of whom also worked for ACS. R. 7, Attach. 3, 4. Both of their affidavits state that, like Polly, they could not recall electronically signing any acknowledgment of the DRP, nor could they recall ever being shown PowerPoint slides detailing the DRP during their orientation. *Id*.

Before the Court can compel the parties to submit their dispute to arbitration, the Court must be "satisfied that the making of the agreement for arbitration . . . is not in issue." 9 U.S.C. § 4. In order to show that the making of the arbitration agreement is "in issue," Polly "must show a genuine issue of material fact as to the validity of the agreement to arbitrate." *Great Earth Cos. v. Simons*, 288 F.3d 878, 889 (6th Cir. 2002). In other words, Polly must produce sufficient evidence that, when viewed in the light most favorable to her, would permit "a reasonable finder of fact [to] conclude that no valid agreement to arbitrate exists." *Id*. If the making of the arbitration agreement is "in issue," the FAA directs the Court to "proceed summarily to the trial thereof." 9 U.S.C. § 4.

The affidavits that Polly submitted do not raise "a genuine issue of material fact" as to whether Polly agreed to be bound by the DRP. Although "an unequivocal denial that the agreement had been made, accompanied by supporting affidavits . . . should be sufficient [in

6

most cases] to require a jury determination on whether there had in fact been a meeting of the minds," *Mazera v. Varsity Ford Mgmt. Servs., LLC*, 565 F.3d 997, 1001 (6th Cir. 2009) (quoting *Par-Knit Mills, Inc. v. Stockbridge Fabrics Co.*, 636 F.2d 51, 55 (3d Cir. 1980)), that is not what Polly said in her affidavit. Polly simply said that she could not recall electronically signing the DRP acknowledgment form. R. 7, Attach. 1. As other courts have held, a party's mere "inability to remember signing [an agreement] is not sufficient to raise a material issue as to the validity of the agreement[]." *Batiste v. Island Records, Inc.*, 179 F.3d 217, 223 (5th Cir. 1999); *see also Castillo Flores v. Harbor Shipping & Trading Co., S.A.*, No. Civ.A. 01-0738, 2001 WL 740509, at *3 (E.D. La. 2001) (collecting cases). Therefore, in the face of ACS' extremely strong evidence that Polly electronically signed the DRP acknowledgment—the electronic signature page itself, R. 6, Attach. 4—Polly's bald averment that she could not recall doing so does not raise a genuine issue of material fact. By her signature alone, Polly is bound the DRP's arbitration clause.

But even beyond the electronic signature, Polly also manifested her assent to the DRP in other ways. Under Kentucky law, parties can be bound to contracts, even absent a signature, when their actions indicate acceptance of the contract's terms. *See, e.g.*, *Sweeney*, 128 S.W.3d at 501. In this case, the DRP clearly provides that "[e]mployment or continued employment . . . constitutes consent by both the Employee and the Company to be bound by this Plan." R. 6, Attach. 3 at 7. Although Polly says in her affidavit that she cannot recall viewing the PowerPoint slides that ACS claims it showed during her New Hire course, R. 7, Attach. 1 at ¶ 9, she does not dispute that she received a copy of the Employee Guidebook or that she attended

the ethics training, both of which advised employees about the DRP. Further, although the affidavits from the two other former ACS employees are of limited relevance to the question of whether Polly agreed to the DRP, neither of them denied receiving a copy of the Employee Guidebook or learning about the DRP during the ethics training either. R. 7, Attach. 3, 4.

The Sixth Circuit has held that an employee assented to an arbitration agreement, even without a signature, in circumstances very similar to Polly's. *Seawright*, 507 F.3d at 978-79. In *Seawright*, the employer promulgated an employee dispute resolution program containing a mandatory arbitration provision. *Id.* at 970. The employer mailed a copy of the program to all employees and told employees about the program in group informational meetings. *Id.* at 970-71. The program provided that "continuing employment" with the company constituted assent to the arbitration requirement. *Id.* at 971. The Sixth Circuit held that, although the plaintiff had not formally signaled her acceptance of the program with a signature, her continued employment constituted assent under Tennessee law (which, like Kentucky law, recognizes that action in conformity with a contract can constitute assent to the contract). *Id.* at 973-74. And the Sixth Circuit held that the agreement was also valid under the FAA, which requires arbitration agreements to be written, "but not necessarily *signed*." *Id.* at 978. As in *Seawright*, ACS advised Polly of the DRP on several different occasions. Also as in *Seawright*, the DRP said that continued employment constituted acceptance, and Polly continued her employment with ACS. Therefore, as in *Seawright*, Polly's actions constituted assent to the DRP and its mandatory arbitration requirement.

## 2. All of Polly's Claims are Referable to Arbitration under the DRP

Having failed to shoot down the DRP as a whole, Polly next argues that the DRP does not apply to the claim in her amended complaint for wrongful use of administrative proceedings. The DRP specifically exempts "claims for workers' compensation benefits or unemployment compensation benefits" from its coverage. R. 6, Attach. 3 at 4. Polly argues that the claim she made in her amended complaint—alleging that ACS wrongfully used administrative proceedings by reporting that she had been terminated for cause, which led the State to initially deny her application for unemployment benefits, R. 1, Attach. 6—falls within the DRP's exclusion. And Polly further argues that, under the "doctrine of intertwining," the Court should deny arbitration of all of her claims because the arbitrable and the non-arbitrable claims are factually intertwined. This argument fails. Not only has the Supreme Court specifically denounced the doctrine of intertwining, *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 216-17 (1985), but the DRP's exclusion for unemployment compensation claims does not apply to the claim in Polly's amended complaint. Polly's claim in this lawsuit is not for unemployment compensation. Rather, she claims that ACS wrongfully used the unemployment compensation proceedings by falsely claiming that she had been terminated for misconduct. Under Kentucky law, that is a tort claim. *See Feinberg v. Townsend*, 107 S.W.3d 910, 911 (Ky. Ct. App. 2003) (describing "[t]he *tort* of wrongful use of civil proceedings.") (emphasis added). And the DRP clearly covers tort claims. R. 6, Attach. 3 at 2 (defining "Dispute," as used in the plan, to include "all legal and equitable claims . . . of whatever nature or kind, whether in contract, *tort*, under statute or regulation, [etc.]") (emphasis added). Just because the alleged tort took place in the context of

9

unemployment benefits proceedings does not mean that the claim is somehow transformed into a claim for unemployment benefits.

But even if the DRP's coverage of Polly's wrongful use of civil proceedings claim were somewhat ambiguous, well-established case law requires the Court to resolve any doubts in favor of arbitration. *See Moses H. Cone*, 460 U.S. at 24-25; *Highlands Wellmont Health Network, Inc. v. John Deere Health Plan, Inc.*, 350 F.3d 568, 576-77 (6th Cir. 2003). Thus, the Court must compel arbitration "unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." *Highlands Wellmont*, 350 F.3d at 577 (quoting *AT&T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 650 (1986)). That is surely not the case here. As set forth above, the DRP is clearly "susceptible of an interpretation that covers" the claim in Polly's amended complaint. *Id.* And Polly does not contest that the DRP covers the FMLA claims in her original complaint. Therefore, all of the claims that Polly has made against ACS are subject to arbitration under the DRP.

That leaves one issue remaining. Because the DRP requires the Court to refer all of Polly's claims to arbitration, should the Court stay this action or dismiss it entirely? Although 9 U.S.C. § 3 seems to direct the Court to stay the case, the Sixth Circuit has said on multiple occasions that "litigation in which all claims are referred to arbitration may be dismissed." *Hensel v. Cargill, Inc.*, No. 99-3199, 1999 WL 993775, at *4 (6th Cir. Oct. 19, 1999); *see also Ozmoor v. T-Mobile USA, Inc.*, 354 F. App'x 972, 975 (6th Cir. 2009) (rejecting argument that 9 U.S.C. § 3 requires stay and affirming district court's dismissal of suit after referring all claims to arbitration). Dismissal makes sense in this case. Retaining jurisdiction while the arbitrator

hears all of Polly's claims—*i.e.*, where there "are no live controversies before this court"—would serve little purpose. *Sea-Land Serv., Inc. v. Sea-Land of P.R., Inc.*, 636 F. Supp. 750, 757-58 (D.P.R. 1986). Either party may return to court after the conclusion of the arbitration if they wish to challenge the arbitrator's decision (although, of course, the scope of the court's review will be "very narrow"). *Int'l Ass'n of Machinists & Aerospace Workers v. Tenn. Valley Auth.*, 155 F.3d 767, 771 (6th Cir. 1998). Therefore, the Court will dismiss Polly's case without prejudice.

**CONCLUSION**

Accordingly, it is **ORDERED** as follows:

(1)     ACS' motion to compel arbitration, R. 6, is **GRANTED**.

(2)     Polly's complaint is **DISMISSED WITHOUT PREJUDICE** and her claims are **REFERRED** to arbitration in accordance with the Dispute Resolution Plan.

(3)     This case shall be **STRICKEN** from the Court's active docket.

This the 11th day of January, 2011.



**Signed By:**

*Amul R. Thapar*

**United States District Judge**